IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES : | |
| : | |
| v. : | Docket No.: 3:18-cr-00322-PD |
| : | |
| GEORGE MATIN, : | |
| : | |
| Defendant : | |
| : | |

## MOTION FOR RECONSIDERATION OF DENIAL OF EXTENSION OF REPORT DATE

Defendant George Matin, by Ellen C. Brotman, Esq. of BrotmanLaw, requests that this Court reconsider the denial of defendant's December 14, 2020 letter request for an extension of his report date and in support thereof, respectfully submits as follows:

1. After pleading guilty to an Information, Mr. Matin was sentenced on September 24, 2020 by this Court to serve 15 months in the custody of the Bureau of Prisons.

2. The Court set Mr. Matin's reporting date to January 8, 2021.

3. Mr. Matin is designated to Lompoc FPC, located approximately 60 miles north of Santa Barbara.

4. In the past few weeks, Covid infections reached a new high in Santa Barbara

California. *See* Exhibit A, Santa Barbara County Public Health Department Press Release.

5. Currently, ICU bed availability in San Joaquin County, where Lompoc is located, is at zero. *See* Exhibit B, https://tinyurl.com/y9m8wlj9.

6. On December 14, 2020, after the recent resurgence of Covid in California, which unfortunately, coincided with Mr. Matin suffering from a rupture of his Achilles tendon, undersigned counsel filed an unopposed letter-request asking the Court to continue Mr. Matin's report date by 60 days.

7. The letter-request cited a December 11, 2020 news article that stated that Lompoc had reported that 10 inmates and one staff member had been infected and that, as a result, visitation had been closed. *See* https://tinyurl.com/yc7k3pc9. (As of the date of the filing of this motion, there are 22 inmates infected and three staff members. https://www.bop.gov/coronavirus/).

8. By email dated December 16, the Court's Deputy Clerk informed the parties that the request was denied.

9. The Court is familiar with the fact that Mr. Matin has a significant ▇▇▇ ▇▇▇▇ and is over 62 years of age. According to the CDC, compared to younger adults, individuals in the age bracket of 50 – 64 are four times more likely to require hospitalization from Covid and over 30 times more likely to

die from Covid. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html. The Court is also aware that Mr. Matin has a history of heart disease. *See* PSR ¶ 101. *See also,* 2016 Report of DOJ/OIG, "The Impact of an Aging Inmate Population on the Federal Bureau of Prisons" at p. 2, identifying the elderly as 50 years and above.[1]

10. However, undersigned counsel's December 14th letter, which addressed the closing of visitation at Lompoc, failed to bring to the Court's attention certain important facts about conditions at Lompoc.

11. Counsel apologizes to the Court for omitting this information and files this Motion for Reconsideration to ensure that the Court has all the relevant facts.

12. The facts presented here relating to the current conditions at Lompoc are derived from two sources: an Office of Investigation Report of the management of the Covid epidemic at Lompoc and documents filed in an ongoing class-action suit brought in the United States District Court for the Central District of California, both discussed below. *See* Exhibit C, Off. of the Inspector Gen., U.S. Dep't of Just., *Remote Inspection of Federal Correctional Complex Lompoc*, (July 23, 2020) https://oig.justice.gov/sites/default/files/reports/20-086_0.pdf; Exhibit D,

---

[1] https://oig.justice.gov/reports/2015/e1505.pdf

Docket Sheet, *Torres v. Milusni* (C.D. Cal. 20-CV-04450); Exhibit E, September 25, 2020, Court-Appointed Expert Report, *Torres v. Milusni,* DKT. 101.

13. On May 16, 2020, the American Civil Liberties Union, on behalf of certain similarly situated federal prisoners housed at Lompoc, filed a Complaint in the United States District Court for the Central District of California. This Complaint sought, *inter alia*, injunctive relief, based on the fact that, as of the time of the filing of the Complaint, at FCI Lompoc and USP Lompoc (collectively "Lompoc"), more than 1,000 incarcerated persons had tested positive for COVID. *See* 20-CV-04450, *Torres v. Milusni* DKT #1; Exhibit D, Docket.[2]

14. The gravamen of the *Torres* Complaint was that Lompoc was not exercising its statutory authority under the CARES Act to grant home confinement to Lompoc inmates in light of the pandemic or giving adequate consideration to appropriate factors, including age and medical conditions in evaluating eligibility of home confinement and was providing unsafe conditions, causing

---

2 On April 3, 2020, in response to the COVID-19 pandemic and calls to reduce the federal inmate population, Attorney General William Barr invoked the CARES Act and ordered the Bureau of Prisons to "immediately maximize appropriate transfers to home confinement of all appropriate inmates held at FCI Oakdale, FCI Danbury, FCI Elkton, and at other similarly situated BOP facilities where COVID-19 is materially affecting operations." Attorney General William Barr, *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19*, (April 3, 2020) https://www.justice.gov/file/1266661/download.

the spread of Covid in the prison.

15. The Complaint asserted "… two causes of action: (1) Unconstitutional Conditions of Confinement in Violation of the Eighth Amendment to the U.S. Constitution pursuant to 28 U.S.C. §§ 2241, 2243; (2) and Unconstitutional Conditions of Confinement in Violation of the Eighth Amendment to the U.S. Constitution pursuant to U.S. Const, Amend. VIII; 28 U.S.C. § 1331; 5 U.S.C. § 702, 'Injunctive Relief Only.'

16. On June 2, Petitioners applied for a temporary restraining order (later converted by consent of the parties to a request for a preliminary injunction) requesting the Court to require (1) Respondents to expedite review and determination of eligibility of Lompoc inmates for home confinement and compassionate release, and (2) improved conditions for inmates remaining at Lompoc in light of COVID-19.3." *See* Exhibit F, *Torres,* DKT. 18.

17. On July 14, 2020, the Preliminary Injunction was granted. *See* Exhibit G, DKT. # 45.  The Court found: "Petitioners show they are at substantial risk of exposure to COVID-19, which is inconsistent with contemporary standards of human decency."  See Doc. 45, p. 18.  The Court also found that "meaningful social distancing is not possible at Lompoc absent a reduction in the inmate population, thereby placing medically vulnerable inmates at Lompoc at significant risk of contracting COVID-19." Exhibit G, p. 32.

18. In light of these findings, the Court certified a class of inmates defined, in-part, as: "all current and future people in post-conviction custody at FCI Lompoc and USP Lompoc *over the age of 50*, and all current and future people in post-conviction custody at FCI Lompoc and USP Lompoc of any age with underlying health conditions . . ." *See* Doc. 45, p. 48. (Emphasis added.)

19. On October 8, 2020 the *Torres* Court issued an Order Granting Motion To Enforce Compliance With Preliminary Injunction And For Order To Show Cause. Exhibit H.

20. The sources cited here demonstrate that Lompoc, despite its best efforts, has struggled with containment of the disease for a variety of institutional reasons. *See* Exhibit I, Santa Barbara Independent, December 11, 2020, "Covid-19 Breaks Back Into Lompoc Prison."

21. Lompoc's efforts to curb the epidemic create challenges that are specific to defendant Matin. *Compare, United States v. Roeder*, 807 Fed. Appx. 157, 161, n.15 (2020) (Requiring a particularized showing of a specific health risk to provide a basis for granting compassionate release.). Aside from the For three weeks upon his arrival, defendant will be quarantined in USP Lompoc, a Medium security level facility, that is unsuited to his offense or his criminal history.

22. This quarantine will require defendant to remain in a single cell, possibly in the Special Housing Unit, where he will have limited access to email, telephone or outdoor recreation. *See* Exhibit C at 12 ("[T]he BOP's Infection Prevention and Control Coordinator told us that institution staff had placed the last transfer of incoming inmates into quarantine in the USP Lompoc's M-Unit. FCC Lompoc Executive Staff stated that the only new inmates on the compound in April were 18 voluntary surrenders to the institution (which FCC Lompoc cannot control), all of whom were designated to the M-Unit.").

23. In a more recent assessment, Dr. Homer Venters, the court-appointed expert in the California class action lawsuit stated that "… *all* quarantine patients are in single cells and that none of them has access to recreation or telephone. The team also stated that at least daily, a temperature check and COVID-19 symptom screening is conducted for all detainees, usually by opening the food slot." Exhibit E, page 15, paragraph 29 (emphasis added).

24. Throughout this proceeding, the Court has been aware of defendant's struggles with significant mental health challenges. *See* Matin Pre-sentence Investigation Report  and, while he has stabilized, his mental health remains fragile. It is indisputable that this period of quarantine, with its isolation and total confinement, will be dangerous and traumatic for a person with his mental health history.

25. Further, the response to the pandemic at Lompoc does not only threaten defendant Matin with risk of infection and harm to his mental stability, it also creates a risk that his chronic health issues will be attended to, including obtaining medications and care in a timely manner.[3] The already overburdened medical system at Lompoc appears unable to provide medical care to its inmates in a timely manner.  *See* OIG Report, Exhibit C at 1 (discussing significant medical staff shortages that were endemic to the whole BOP system and contributed to the spread of Covid at Lompoc); *see also* Court-appointed Expert Report, Exhibit E at 23 ("Chronic care encounters were also reported by almost all people in the chronic care service to take far longer than the 3-6-month window referenced by BOP staff. These delays were also clear when I reviewed the chronic care roster referenced by the Clinical Director, but this information is not part of regular quality assurance. These delays in chronic care can significantly increase the risk of serious illness or death from COVID-19 since poorly controlled health problems are associated with worse COVID-19 outcomes… I also reviewed utilization data which showed that 184 chronic care encounters occurred in the month of August 2020. The facility separately reported that a total of 1134 detained

---

[3] On information and belief, there is already a question as to whether Mr. Matin's prescription drugs, Crestor and Xanax are available through the BOP formulary.

people qualify as being high risk for serious illness or death from COVID-19, 50.8 % of the total population. Based on assumptions shared by staff, that most of those people are on the chronic care service and that there is a range of time intervals between 1 and 6 months for chronic care encounters, this monthly pace of chronic care encounters falls far below what is needed.").

26. Dr. Venters also reported that "[m]any patients with chronic health problems, including hypertension, diabetes and asthma reported that they went many months, often more than 6, without being seen in the chronic care clinic. … People with hypertension stated that their blood pressure was generally not checked in between chronic care visits, so that they went many months without knowing their blood pressure, and people with asthma reported that their peak flow measurement was not checked, either during chronic care visits or during asthma attacks." Exhibit E at p. 9. As the Court is aware, Mr. Matin suffers from ▮▮▮▮▮▮▮; this disease needs to be monitored and has been identified as a co-morbidity factor in Covid deaths. *See* https://tinyurl.com/y24yutuo.

27. Another serious issue identified by expert Dr. Venters was the failure to provide ongoing medical care to inmates who had survived the initial critical phase of Covid but had lingering medical issues. *See* Exhibit E, at pp. 23 – 24 ("A separate access to care issue is the lack of assessment for ongoing

COVID-19 symptoms among people who have survived the infection. I spoke with many people who reported ongoing shortness of breath, pain, headaches, weakness and ringing in the ears weeks after their initial infection. The presence of these ongoing symptoms and even disability among a group of people who are classified by BOP as 'recovered' reveals a lack of any system to look for these problems after a person leaves medical isolation. BOP has an obligation to assess COVID-19 patients and care for those who require physical therapy, specialty referral and other types of care during recovery.").

28. Dr. Venters found that, despite several institutional strengths, Lompoc suffered from deficiencies in testing and screening, access to sick call and chronic care, poor infection control and a "punitive approach to quarantine." Exhibit E at 21 – 25.

29. Lompoc's challenges in containing the spread of Covid-19 would have an especially harmful effect on defendant Matin because of his age, his chronic physical health issues and his mental health.

30. Defendant Matin is hoping that he will be able to receive the Covid vaccine within the next 30 days, alleviating at least some of the concerns about his imprisonment.

31. The Court and the Government have already agreed that Mr. Matin is not a risk of flight or a danger to the community. This requested extension of his

due date will enable defendant Matin to be imprisoned *after* receiving the vaccination. This will significantly reduce his risk of severe illness while imprisoned, will also likely impact the prison's decision on whether defendant has to undergo quarantining. This extension will also reduce the burden on the institution of an elderly individual being exposed to Covid.

32. Undersigned counsel has discussed this motion with AUSA Patrick J. Murray. Mr. Murray is reviewing the motion and its exhibits and will inform the Court as soon as possible as to whether or not he will oppose the motion.

Wherefore, defendant Matin asks this Court to reconsider its denial of the request to extend his report date from January 8, 2021 to March 8, 2021.

Respectfully submitted,

*Ellen Brotman*

_____
Ellen C. Brotman, Esq.
PA Id. # 71775
Brotman Law
One South Broad Street
Suite 1500
Philadelphia, PA 19107
215-609-3247

ebrotman@ellenbrotmanlaw.com
*Attorney for Defendant*

December 21, 2020

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of December 2020 I caused a copy of the foregoing Notice of Appearance to be served upon Patrick Murray, AUSA by email at Patrick.J.Murray@usdoj.gov.

       */s/ Ellen C. Brotman*
Ellen C. Brotman, Esq.
PA Id. # 71775
Brotman Law
One South Broad Street
Suite 1500
Philadelphia, PA 19107
215-609-3247

ebrotman@ellenbrotmanlaw.com
*Attorney for Defendant*