IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 17-614 |
| HAROLD MINSKY | : | |
| | | |
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 18-322 |
| GEORGE MATIN | : | |

**GOVERNMENT'S STATEMENT IN SUPPORT OF DEFENDANTS' REQUESTS FOR CONTINUANCE OF SELF-SURRENDER DATE**

This Court has directed that defendants George Matin and Harold Minsky surrender on January 8, 2020, at the designated institution, USP Lompoc, to serve their sentences, and recently denied defendant Matin's motion to reconsider that action. The defendants have filed appeals of the bail decisions (Matin at No. 20-3630, and Minsky at No. 20-3645). The Court of Appeals has not yet ordered the government to respond but is expected to do so shortly.

The government previously advised this Court, through representations to defense counsel, that the government did not oppose the defendants' request to delay self-surrender. We write at greater length here, prior to addressing the Court of Appeals, to give the Court the benefit of our view that a delay in self-surrender is appropriate to serve

the interests of both the defendants and the Bureau of Prisons, and to respectfully request that the Court delay the self-surrender of the defendants for a period of 60 days.

Defendants Matin and Minsky were charged with one count of conspiracy, in violation of 18 U.S.C. § 371, two counts of wire fraud, in violation of 18 U.S.C. § 1343, and two counts of securities fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff, 17 C.F.R. § 240.10b-5. Both pled guilty to all five counts.

In 2016 and 2017, Minsky and Matin participated in a conspiracy to manipulate the stock price and trading volume of two public companies: WGE Holdings Corp. ("WGE") and Holy Grail Company ("Holy Grail"). Minsky, Matin, and their co-conspirators did this by establishing control over both the restricted and free trading shares of WGE and Holy Grail, coordinating press releases with the stock promotions in order to give the false impression of market interest in the stock, and executing prearranged trades pursuant to bribe payments.

As part of this conspiracy, they agreed to a fraudulent proposal offered by a cooperating witness (the "CW"). Pursuant to this proposal, the co-conspirators would pay purchasers to buy their shares of WGE and Holy Grail. By so doing, the conspirators would increase the price and trading volume of the stock, creating the false appearance of an active market in the stock. After creating this false appearance, the conspirators could then sell additional shares into the manipulated market, thereby defrauding the individuals to whom they would sell their stock.

Minsky, Matin, and several conspirators attempted to implement this scheme with respect to WGE in November 2016, executing a test cross-trade on November 21, 2016,

and making a bribe payment to the CW on November 30, 2016. Their manipulation was stopped, however, when the SEC suspended trading in WGE stock in early December 2016. Immediately afterwards they started again with a new public company (Holy Grail). After substantial planning, they executed a prearranged trade on May 12, 2017, and then made the bribe payment on May 19, 2017. Again, their manipulation was stopped by the SEC. Minsky and Matin intended to generate approximately $9 million in illegal proceeds for themselves and to cause corresponding losses to their victims.

On September 23, 2020, Minsky was sentenced to 12 months and a day of incarceration, two years' supervised release, and a $5,000 fine.

On September 24, 2020, Matin was sentenced to 15 months of incarceration, two years' supervised release, and a $5,000 fine.

Minsky has been released on bail without incident since his guilty plea hearing on May 2, 2019.

Matin was released on bail at his guilty plea hearing on October 10, 2019. On October 28, 2019, however, a warrant was issued for his arrest after U.S. Pretrial Services filed a petition over concerns about the defendant's mental health. Matin immediately checked himself into a mental health facility, and the warrant was withdrawn on November 15, 2019. There have been no other concerns or compliance issues.

At each sentencing proceeding, the Court agreed to delay self-surrender until January 8, 2021. The defendants have since been designated to USP Lompoc in California, where it appears they will be assigned to a minimum security camp attached to the penitentiary. Each defendant has requested a delay in self-surrender, expressing

concern that he is at risk from COVID-19 in the prison environment. Matin requested a 60-day extension, and Minsky requested a 90-day extension.

Matin is 61 years old and presents a cardiac condition. Matin further expresses concern that his mental health would be adversely affected by the initial 14-day quarantine required of all arriving inmates as part of BOP's virus mitigation efforts.

Minsky is 82 years old, placing him at an age where he faces significantly enhanced risk if he contracted COVID-19. In addition, he advises that he is mildly obese, suffers from asthma, and presents atrial fibrillation, all of which are conditions that, according to the CDC, might increase the risk of a severe outcome from COVID-19.

Under 18 U.S.C. § 3143(a)(1), the district court may release on bail a person who has been convicted and sentenced, pending execution of the sentence, if that person is not likely to flee or pose a danger to the safety of any other person or the community if released. 18 U.S.C. § 3143(a)(1). This Court has discretion to set the date of execution of the sentence.

The government believes that a delay in self-surrender of both defendants is warranted by the current public health crisis. Neither defendant presents a risk of flight or danger to the community. A delay in self-surrender is sensible both to protect the health of the defendants, and to further BOP's goal to limit the prison population to the extent possible in order to promote social distancing of inmates and conserve BOP resources during this challenging time.[1] Moreover, a delay of 60 days may be sufficient to bridge

---

[1] The government has consistently taken the position throughout the pandemic that delays in self-reporting that do not threaten public safety are one of the appropriate

the period until the availability of vaccines to BOP inmates is widespread. Delaying self-surrender until that time is the best assurance that these defendants will fully serve in the near future the full, appropriate sentences imposed by the Court.[2]

For these reasons, the government supports the defendants' request for a 60-day delay in the date of self-surrender.

                                             Respectfully yours,

                                             WILLIAM M. McSWAIN
                                             United States Attorney

                                             */s Robert A. Zauzmer*
                                             ROBERT A. ZAUZMER
                                             Assistant United States Attorney
                                             Chief of Appeals

---

means for lessening the risk of the harm of COVID-19 in federal prisons. *See, e.g.*, *United States v. Roeder*, 807 F. App'x 157, 159-60 (3d Cir. Apr. 1, 2020) (not precedential) (recognizing government's position and extending period to self-report).

    [2] The defendants' motions for release presented detailed but very outdated information regarding the situation at the Lompoc correctional complex, which includes a penitentiary and a low-security institution. Those facilities (particularly the low-security FCI) did experience a huge outbreak at the beginning of the pandemic, including a number of deaths; the situation was then assessed in an inspector general's report as well as by an outside inspector retained in civil litigation. The situation then improved significantly. There are 16 inmates at the penitentiary who currently test positive, and are isolated while they are treated/recover, and none at the FCI. *See United States v. Bermudez*, 2020 WL 7338556, at *2 (E.D. Pa. Dec. 14, 2020) (Pratter, J.) ("multiple courts have found that, despite its earlier failures to contain the disease within its inmate population, Lompoc has since 'implemented sufficient protocols that the prison is now able to adequately respond, monitor, and care for its inmates' during the pandemic. *United States v. Risley*, No. 1:12-CR-0363 AWI, 2020 WL 4748513, at *6 (E.D. Cal. Aug. 17, 2020) (collecting cases)."). But it is undeniable that the Southern California region is presently experiencing a significant surge in COVID-19 cases, and the risk in the prison environment of viral spread remains; BOP therefore continues to take extraordinary measures to mitigate the risk.

*/s Patrick J. Murray*
PATRICK J. MURRAY
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that this pleading has been served on the Filing Users identified below through the Electronic Case Filing (ECF) system:

>Leigh Skipper, Esq.
>Chief Federal Defender
>
>*Counsel for Harold Minsky*
>
>Ellen C. Brotman, Esq.
>
>*Counsel for George Matin*
>
>                                    /s Patrick J. Murray
>                                    PATRICK J. MURRAY
>                                    Assistant United States Attorney

Dated: January 3, 2021